People v Watson (2019 NY Slip Op 00217)





People v Watson


2019 NY Slip Op 00217


Decided on January 10, 2019


Appellate Division, First Department


Manzanet-Daniels, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 10, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman,J.P.
Rosalyn H. Richter
Sallie Manzanet-Daniels
Judith J. Gische
Angela M. Mazzarelli, JJ.


4033/09 15595 

[*1]The People of the State of New York, Respondent,
v
Shaequawn Watson, Defendant-Appellant.



Defendant appeals from a judgment of the Supreme Court,
Bronx County (Thomas A. Breslin, J.), rendered May 17, 2013, convicting him, after a jury trial, of assault in the second and third degrees and resisting arrest, and imposing sentence.




Robert S. Dean, Center for Appellate Litigation, New York (Jody Ratner of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Shera Knight and Peter D. Coddington of counsel), for respondent.



MANZANET-DANIELS, J.


On the prior appeal (141 AD3d 23 [1st Dept 2016]), we held that the trial court failed to follow the three-part protocol set forth in Batson v Kentucky (476 US 79 [1986]), thus precluding us from determining whether the prosecution had exercised its peremptory challenges in a discriminatory manner when it struck all African American males from a panel of prospective jurors. We remanded for a new hearing to properly apply Batson, as well as to clarify certain portions of the voir dire record where prospective jurors made statements relevant to the present inquiry but the transcript failed to identify them by name.
At step one, we held that Batson extends to combined race-gender groups such as black males (141 AD3d at 28). We found that the wholesale exclusion of African American males gave rise to a mandatory inference of discrimination at the first step of the Batson inquiry, noting, inter alia, that the prosecutor chose not to strike similarly situated jurors who expressed skepticism about the credibility of police officers. At step two of the inquiry, we found that the prosecutor's putatively race neutral explanations could not be assessed and resolved as a matter [*2]of law given, inter alia, the ambiguities and lack of clarity in the record (id. at 29). Among other things, there was no record evidence concerning any alleged negative encounters between two of the three jurors struck (Prosser and Lortey) and the police. A so-called "unnamed juror" expressed having had such encounters; however, those comments could not be definitively attributed to any of the venire persons.
At the Batson reconstruction hearing, a different ADA than the one who conducted the jury selection appeared on behalf of the People. The People did not turn over the notes of the ADA who did conduct the jury selection. Nonetheless, the trial court proceeded to solicit and to rely on statements from the new ADA with respect to why Lortey had been struck. It should be noted that the new ADA never claimed that his colleague believed the unnamed juror to be Lortey.
The trial court ascribed the comments of the unnamed juror to Lortey, based on its recollection of details from the voir dire four years earlier, and without the benefit of any contemporary notes or other evidence, which, again, was not presented at the hearing. The trial court did not conduct an analysis at stage three, despite this Court's explicit instruction (id. at 30), and failed to address the peremptory challenge of Hewitt in any way.
We now hold that the reconstruction hearing failed to satisfy the requirements of Batson.
The Court in Batson held that the People must exercise their peremptory challenges in accordance with the mandate of the Equal Protection Clause. "The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors" (Batson, 476 US at 86 [internal citations omitted]). The Court in Batson recognized that the harm flowing from discrimination in the selection of a jury "extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. . . . [thereby] undermin[ing] public confidence in the fairness of our system of justice" (id. at 87). In order to avoid such harm, the burden is on the State, at stage two of the inquiry, to proffer race-neutral reasons for the striking of venire persons in a cognizable group (id. at 97).
The purpose of a Batson reconstruction hearing is to attempt to recreate, after the fact, a record of the prosecutor's proffered justifications for striking certain venire persons. At such a hearing, it is typical to rely on the contemporaneous notes of the prosecutor and to elicit testimony from him or her. The prosecutor testifies as a sworn witness, and is subject to cross-examination concerning the strike or strikes (see Jonathan Abel, Baston's Appellate Appeal and Trial Tribulations, 118 Colum L Rev 713, 749-750 [2018]).
"[T]here is no better evidence of a prosecutor's intent than her notes from jury selection" (id. at 738); indeed, seminal opinions on Batson have referred to jury selection notes as evidence of prosecutorial bias (see e.g. Foster v Chatman, ___ US ___, 136 S Ct 1737, 1755 [2016]). In Foster, the prosecutor's notes were not disclosed until post-conviction proceedings years later. The notes showed the letter "B" next to the names of the African American jurors and their names highlighted in green pen. Three decades after trial, the contents of the notes led the Supreme Court to reverse the defendant's conviction.
No testimony or notes were offered at this Batson reconstruction hearing. The ADA who conducted the voir dire did not appear and his notes were never disclosed. The ADA at the reconstruction hearing could only speculate as to the motives of his colleague. This procedure was insufficient to satisfy the requirements of Batson.[FN1]
The People argue that defense counsel was given an adequate opportunity, at stage three of the protocol, to argue that the prosecutor's explanations were a pretext for discrimination. The People note that although other venirepersons who were seated expressed hostility toward the police, those jurors had not been the victims of police harassment.
We cannot agree with the People's logic. Indeed, refusing to seat any and all jurors who have been unfairly stopped and frisked or otherwise been the victim of police harassment is effectively a pretext for excluding a particular protected group as prospective jurors (see City of Seattle v Erickson, 188 Wash2d 721, 738 [2017] [McCloud, J., concurring] [noting that frequently advanced race-neutral reasons for striking potential jurors, such as expressions of distrust of the police or belief that police engaged in racial profiling, served to exclude racial and ethnic minorities from juries]). It is a lamentable fact that a disproportionately high number of black males in this City have had occasion to be stopped and frisked by the police in a manner that does not comport with the Constitution (see New York State Office of the Attorney General, A Report on Arrests Arising from the New York City Police Department's Stop-and-Frisk Practices [Nov. 2013]). To allow exclusion solely on this basis would bring us close to a reality where African American males are effectively barred from serving on juries in criminal trials, a proposition we cannot endorse. As sagely observed by the Court in Batson, the "core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race" (Batson, 476 US at 97-98). We do not establish a "per se" prohibition on the People's exercise of peremptory challenges for race-neutral reasons that apply disproportionately to a protected group, as Justice Friedman asserts; indeed, it is the hearing court's decision that threatens to establish a per se rule excluding all African American males as venirepersons.
Not content to discuss the merits of the current appeal — delimited in scope to the question of whether the trial court abided by our instructions concerning the parameters of the Batson remand hearing — Justice Friedman rehashes the merits of our determination on the prior appeal. As his contentions are largely redundant we decline to address them; it is plainly not the prerogative of our colleague to revisit the merits of an already decided appeal on which he has already authored a lengthy dissent.
Finally, the hearing court had no basis for concluding that the prosecution's decision to strike Prosser was nondiscriminatory, as our colleague Justice Richter recognizes. Justice Richter also recognizes that the hearing court made no findings whatsoever on pretext (as to any of the jurors), and that the record does not support the hearing court's conclusion that the defense conceded that the People's striking of two of the jurors at issue was non-pretextual.
There is no basis to remand for a second Batson hearing, given the hearing court's utter failure to abide by our instructions on the prior remand. Defendant has fully served the incarceratory portion of her sentence, and remanding the case for a new trial would not be in the interest of judicial economy (see People v Flynn, 79 NY2d 879, 882 [1992]; People v Johnson, 88 AD2d 552 [1st Dept 1982]).
Accordingly, the judgment of the Supreme Court, Bronx County (Thomas A. Breslin, J.), rendered May 17, 2013, convicting defendant, after a jury trial, of assault in the second and third degrees and resisting arrest, and sentencing her, as a second felony offender, to an aggregate term of four years, should be reversed, on the law, and the indictment dismissed.
All concur except Friedman, J.P. who dissents in an Opinion and Richter, J. who dissents in an Opinion.




FRIEDMAN, J.P. (dissenting)


Initially, for the reasons discussed in my dissent from our previous decision holding the appeal in abeyance pending a Batson reconstruction hearing (141 AD3d 23, 30-41 [1st Dept 2016]), I continue to believe that we improvidently exercised our discretion to entertain defendant's unpreserved claim of a Batson error during jury selection at her trial (see Batson v Kentucky, 476 US 79 [1986]). To the extent there is any doubt on appeal as to what each prospective juror stated upon questioning during voir dire, that doubt results from the fact that the transcript does not identify the panelists by name. There is no reason to believe that, during the voir dire proceedings, the court and counsel — who had just seen and heard the panelists give their answers — were similarly in doubt. Therefore, the absence of any objection by defendant's trial counsel to the race-and-gender-neutral rationale offered by the prosecutor for his exclusion of two panelists (Prosser and Hewitt), or to the prosecutor's failure to articulate a rationale for excluding a third panelist (Lortey), is presumably attributable to defense counsel's knowledge that all three of these panelists had spoken of having had negative encounters with the police, as the prosecutor had characterized the responses of Prosser and Hewitt. Similarly, the absence of any objection by defense counsel to the court's omission of an express offer to the defense of an opportunity to show that the People's rationale for the exclusions was pretextual is presumably attributable to defense counsel not having had any substantial pretext argument to make. I see no justification for our having relieved defendant's trial counsel of the responsibility placed on him by the Court of Appeals "to plac[e] [his] objections on the record so they may be addressed by the court" (People v Smocum, 99 NY2d 418, 424 [2003]).
Now that the Batson reconstruction hearing ordered by our previous decision has been conducted, I see no basis either for finding (as the majority does) that a Batson violation occurred or for remanding for yet another hearing (as Justice Richter would have us do)[FN2]. The record of the new hearing, which was presided over by the same justice who presided over the trial, clarifies — to the extent the record was not already clear — that each of the three panelists at issue disclosed that he had experienced negative encounters with the police. Further, none of the pretext arguments offered by defense counsel at the reconstruction hearing has any merit. Accordingly, I would reject defendant's Batson argument and proceed to consider her remaining argument for the reversal of her conviction.
Before going further, I note my agreement with Justice Richter that there is no basis for the majority's apparent discrediting of the independent recollection of the voir dire proceedings by the justice who presided at both the trial and the reconstruction hearing. At the reconstruction hearing, when questioned by defense counsel about his ability to recall the trial, the justice stated: "I only tried three cases in the Bronx so I have a distinct recollection of the case. I have a distinct recollection of dealing with the case and my recollection is clear so thank you." In this regard, upon review of the outcome of a reconstruction hearing, a high degree of deference is owed to the trial justices's resolution of any ambiguities in the record of the original proceedings over which he presided:
"[T]he final arbiter of the record should be the Judge who presided at the original proceedings sought to be reviewed, if he is available. At a minimum, he should take charge of the reconstruction proceeding. In such a proceeding he is not merely, or not at all, a witness; he is the official who certifies to the appellate court — if he can — what took place before him" (People v Carney, 73 AD2d 9, 12 [1st Dept 1980]).
While, for the foregoing reasons (as more fully explained below), I would dissent even if the majority were merely remanding for a new trial based on its finding of a Batson error, I even more emphatically dissent from the majority's dismissal of the indictment. In so doing, the majority — on the pretext of a procedural error having no relevance to the question of guilt or innocence — wipes from defendant's record the serious felony charges of assault in the second degree, which is supported by police officers' testimony that she violently and unjustifiably attacked them. I do not see why the procedural error perceived by the majority should constitute a reason to reward a person convicted of biting a police officer with the dismissal of her indictment. I agree with Justice Richter that, even if the majority were correct in finding that a Batson error occurred, defendant's proper remedy for any such error would be a new trial.
At the outset of its decision, the majority appears to suggest that the People — who were not represented at the reconstruction hearing by the same prosecutor who appeared at trial — could not meet their obligation to offer a race-and-gender-neutral reason for the peremptory challenges at issue without offering sworn testimony by the trial prosecutor and producing his notes. I am not aware of any case law supporting such an argument, and the majority cites none; indeed, as noted by Justice Richter, the Court of Appeals has specifically rejected the contention that, at a Batson reconstruction hearing, the trial prosecutor must testify as a sworn witness and be subject to cross examination (see People v Hameed, 88 NY2d 232 [1996], cert denied 519 US 1065 [1997]). As to the nonappearance of the trial prosecutor, it may well be that he had left the District Attorney's office by the time of the reconstruction hearing. The prosecutor who appeared at the reconstruction hearing stated that he had discussed the matter with the trial prosecutor, and I see no reason that his representation of the trial prosecutor's reasons should not be sufficient. Again, the majority cites no precedent supporting the imposition of the requirement that the existence of a nondiscriminatory rationale for the exercise of a peremptory challenge be proven at a Batson reconstruction hearing by evidence that would be admissible at trial, or that the right of confrontation applies at such a hearing [FN3]. As for the trial prosecutor's notes, there is no indication that defense counsel even requested such notes — which in any event may no longer exist — at any time before the reconstruction hearing was underway. Nor does the majority suggest the parameters of the right it would confer on defendants to examine the prosecution's notes in this context.[FN4]
In its previous decision, the majority remanded for a Batson reconstruction hearing based, in part, on its view that "[t]he record is pointedly deficient as to Lortey, as to whom nonpretextual explanations were not even offered, and Prosser, as to whom no record exists to support the assertion that he had been the victim of police harassment" (141 AD3d at 30). Turning first to Prosser, contrary to the majority's statement in the previous decision, there was no "deficien[cy]" as to him in the voir dire record, both because the People offered a race-and-gender-neutral reason for challenging him (as is undisputed) and because — even if, as the majority wrongly assumes, that the proffered neutral reason must be supported by record evidence — the voir dire record contains such evidence.
The question for purposes of the second step of Batson is whether the prosecutor offered a neutral reason for the challenge, not whether the evidentiary support for the proffered reason made it into the record (see Foster, 136 S Ct at 1747 [the second step of Batson requires the prosecution to "offer a race-neutral basis for striking the juror in question"] [internal quotation marks omitted]). Plainly, the trial prosecutor in this case — who stated on the record at voir dire that "Mr. Prosser indicated that he had been harassed by police officers" (see 141 AD3d at 33 n 3 [internal quotation marks omitted]) — offered such a reason as to Prosser. The majority cites no support for its view that this statement by the trial prosecutor — which defendant's trial counsel did not dispute as a matter of fact — is not sufficient, by itself, to satisfy the second step of the Batson inquiry [FN5]. In this regard, the view of the majority (and also apparently of Justice Richter) [*3]that the proffer of a neutral reason for a peremptory challenge is void unless the factual basis for the reason is obvious from the cold record clashes with the teaching of the Court of Appeals that it is "for the trial court to determine if the prosecutor's explanation was pretextual or real and justified by the answers and conduct of the . . . jurors during voir dire" (People v Hernandez, 75 NY2d 350, 356 [1990] [emphasis added], affd sub nom. Hernandez v New York, 500 US 352 [1991]). Thus, the trial court's acceptance of the prosecutor's representation at voir dire that Prosser had "indicated that he had been harassed by police officers" should be viewed as a finding that Prosser actually made such a statement. Regardless of any ambiguity on the face of the cold transcript as to which panelists stated that they had been subject to police harassment, the trial court's finding of fact that Prosser had made such a statement — a finding that, to reiterate, was not challenged by defendant's trial counsel at voir dire — is "entitled to great deference'" (id., quoting Batson, 476 US at 98 n 21). I regret that the majority fails to rectify at this juncture its previous failure to accord the trial justice's fact-finding at voir dire the deference it deserves.[FN6]
In any event, contrary to the majority's view, it is discernible from the voir dire record itself that Prosser was the "unnamed juror" who, as the majority noted in its prior decision, "stated, You know, the stop and frisk policy, that happens to me every day, five days out of the week'" (141 AD3d at 25-26 [emphasis added]). As the majority also noted in the prior decision, the trial prosecutor's inquiry of this "unnamed juror" (in which the foregoing statement was made) immediately followed the prosecutor's inquiry of Hewitt "regarding his encounters with the police" (see id. at 25)[FN7]. Thereafter, in asserting the peremptory challenges to Prosser and Hewitt, the prosecutor stated: "Mr. Prosser indicated that he had been harassed by police officers. So had Mr. Hewitt. He also indicated that he had been harassed by police officers every day" (141 AD3d at 33 n 3 [internal quotation marks omitted; emphasis added]).
Although, on its face, the foregoing statement by the prosecutor might be deemed [*4]ambiguous as to which panelist claimed to have been harassed by the police "every day," any ambiguity is resolved by a review of the record of the questioning of Hewitt and of the unnamed following panelist. Hewitt (whom, to reiterate, the prosecutor addressed by name) made no claim that he had been subjected to police harassment every day — on the contrary, he said that he had been stopped and frisked only "a couple of times" (141 AD3d at 29 [internal quotation marks omitted]). It was the panelist who was questioned immediately after Hewitt, rather, who complained that he was stopped and frisked "every day, five days out of the week, while I'm at work, during work, on my way to work." Since Hewitt did not make the "every day" statement, it logically follows that the prosecutor was attributing that statement to Prosser, the other panelist he was discussing. Prosser's statement that the police stopped him "every day" — as well as his preceding statement that the police "do judge people the way they want to, meaning you shouldn't judge a book by its cover" — gave the People reasonable grounds, neutral as to both race and gender, to question Prosser's ability to give police officers' testimony a fair hearing.
Prosser's statement about being stopped and frisked "every day" did not exhaust the People's race-and-gender-neutral reasons for challenging him. As the trial prosecutor noted at voir dire, "Mr. Prosser . . . was constantly making faces and it was just — he said I don't want to be here, so I think that it was that he wouldn't have been a good juror for race neutral reason[s]." Even defendant's trial counsel conceded that he "agree[d] that Lortey and Prosser demonstrated in a variety of ways that they didn't want to be here." While I realize that this is not determinative, in the reconstruction proceedings, the People also pointed out to the court that Prosser could reasonably be suspected of bias against police testimony based on the fact that he had an uncle who worked in internal affairs, the "arm of the police department charged with investigating the criminal activity of police officers[.]"
The majority dismisses the foregoing analysis of the record with respect to Prosser as somehow "redundant" (of what it does not say), and asserts that "it is plainly not the prerogative of our colleague to revisit the merits of an already decided appeal on which he has already authored a lengthy dissent." This Court's previous decision, however, emphatically did not decide this appeal, but held it in abeyance pending a Batson reconstruction hearing to be conducted on remand (see 141 AD3d at 30). That hearing having been held, the same bench is now resuming consideration of the same appeal, on the same record (albeit with certain additions), and I see no impediment to our reexamining the original voir dire record to determine whether we previously overlooked grounds for resolving the Batson issue as to either Prosser or Lortey. For the reasons just explained, the majority, in its previous decision, overlooked that the original voir dire record, by itself, establishes that the prosecution's proffered race-and-gender-neutral reason for the peremptory challenge to Prosser (1) was supported by Prosser's responses and (2) that the trial justice made a finding of fact to that effect, to which this Court owes deference (see Hernandez, 75 NY2d at 356). Accordingly, without regard to the results of the proceedings held on remand, there never has been any step-two Batson issue with respect to Prosser, and we should correct our previous oversight by saying so now. I see no justification for closing our eyes to what is shown by a careful examination of the original voir dire record.
With respect to Lortey, to the extent there was any deficiency of the trial record to establish that the People offered a "facially neutral reason for the challenge" to him (People v Allen, 86 NY2d 101, 109 [1995]), it has been remedied by the record of the reconstruction hearing [FN8]. As noted in my previous dissent (141 AD3d at 33), upon the original Batson [*5]application, the People did not offer a specific rationale for challenging this panelist — an omission to which, again, defendant's trial counsel did not object. At the reconstruction hearing, the People clarified that they had challenged Lortey for the same reason they had challenged Prosser and Hewitt, namely, because he had "expressed reservations about [his] ability to listen fairly to police testimony." Shortly thereafter, the reconstruction court — to reiterate, the same justice who had presided at trial — stated, in response to an objection by defense counsel, that it was his "distinct recollection" that Lortey was an "unnamed juror" referenced in this Court's previous decision as having indicated that he had been harassed by the police (141 AD3d at 25-26). That, the reconstruction court explained, was "why I said on the record I would have granted the challenge [of Lortey] for cause." In subsequently denying the Batson motion, the reconstruction court implicitly approved, based on what the court described as its "distinct recollection of dealing with the case," the People's attribution to Lortey, in their posthearing memorandum, of a panelist's statement that he had had "[b]ad experience with cops" and that, as a result, he was "not sure what it would trigger emotionally to impact my judgment" — one of the two statements by an "unnamed juror" discussed in this Court's previous decision (see 141 AD3d at 25).[FN9]
The attribution to Lortey of the statement concerning "[b]ad experience with cops" is consistent with the court's subsequent statement at voir dire that it would have excused Lortey "for cause," had it been asked to do so, and with defendant's trial counsel's statement that "Lortey and Prosser demonstrated in a variety of ways that they didn't want to be here." Thus, in my view, the People have satisfied their obligation, on the second step of the Batson inquiry, to offer a neutral explanation for challenging Lortey, and have, in addition, identified evidentiary [*6]support for that reason, as the majority believes they must also do.[FN10]
Although the hearing court's decision after the reconstruction hearing failed to address, on the merits, the third step of the Batson inquiry — whether defendant had shown that the People's proffered neutral reason for the challenges were pretextual — the court had afforded defense counsel an opportunity to make arguments concerning pretext at the hearing [FN11]. I see no reason to send the case back to Supreme Court to make findings on the pretext issue when defendant's arguments in this regard are on the record and this Court can assess their merits. Having reviewed these arguments, I find them to be entirely without merit. That the panelists in question may have asserted that they would try to be fair, or that they understood that the police have an important role to perform, would not necessarily have negated the effect of their own negative interactions with the police, and the prosecutor had no obligation to assume that it would (see Foster, 136 S Ct at 1753 [in setting forth reasons for the exercise of a challenge under Batson, "(a) prosecutor is entitled to disbelieve a juror's voir dire answers"]; People v Cunningham, 21 AD3d 746, 748 [1st Dept 2005] ["the prosecutor was not required to accept the prospective juror's statements at face value"], lv dismissed 6 NY3d 775 [2006]). Nor were the People required to assume that the fact that Prosser had relatives who worked in law enforcement meant that, notwithstanding his unpleasant encounters with the police, he would assess police testimony fairly.
Defendant also argued at the reconstruction hearing that the record reflected that the People had not struck from the jury two "similarly situated" panelists, neither of whom was an African-American man, whose impartiality toward the police could be questioned. In fact, neither of these prospective jurors (both of whom were African-American women), although each expressed some wariness toward the police, testified to having been personally involved in a negative interaction with the police. Thus, they were not similarly situated to the panelists here at issue, who testified to having had such personal experiences. In this regard, the majority loses sight of the principle that a facially neutral reason for a challenge to a juror passes muster under Batson "even if that reason is ill-founded — so long as the reason does not violate equal protection" (People v Allen, 86 NY2d at 109).
Finally, like Justice Richter, I cannot agree with the majority's argument that there should be a per se prohibition on the People's exercise of peremptory challenges for race-neutral reasons that might apply disproportionately to a protected group (see Hernandez v New York, 500 US at 361 ["disproportionate impact does not turn the prosecutor's actions into a per se violation of the Equal Protection Clause"]). I note that, while the majority takes me to task for disagreeing with it on this issue, I have simply concurred with Justice Richter on this point.
For the foregoing reasons, I respectfully dissent, and would, after rejecting defendant's Batson claim, proceed to consider the remaining issue she raises on her appeal.
RICHTER, J. (dissenting)
I dissent from the majority's dismissal of the indictment and instead would remand for a reopened Batson hearing. We previously held this appeal in abeyance (141 AD3d 23 [1st Dept 2016]) and remanded the matter due to certain deficiencies in the original Batson hearing. The pertinent facts can be briefly stated. During voir dire, defense counsel objected to the prosecutor's use of peremptory challenges to remove the only three male African-American jurors: Hewitt, Prosser and Lortey. The prosecutor responded that he struck Hewitt and Prosser because of their prior interactions with police officers, stating that both men indicated that they had been harassed by the police, but failed to give any explanation for his challenge as to Lortey. The trial judge summarily denied the Batson application, finding the prosecutor's explanations to be race-neutral, and remarking that he "would have knocked Lortey off for cause if asked."[FN1]
In our previous decision, we found that although defense counsel had made a prima facie showing of discrimination against African-American males, the prosecutor's putatively neutral explanations could not be properly assessed due to "ambiguities and lack of clarity in the record" (141 AD3d at 29). In particular, we noted that the transcript did not show that either Prosser or Lortey stated that they had any negative encounters with police officers. Although one or more unnamed jurors had made reference to having bad experiences with the police, we found that "on this incomplete record, there is no way of definitively attributing [those comments] to either Prosser or Lortey" (id.).
In remanding the matter, we identified two problems with the Batson hearing. First, we found that the record was "pointedly deficient as to Lortey, as to whom nonpretextual explanations were not even offered, and Prosser, as to whom no record exists to support the assertion that he had been the victim of police harassment" (id. at 30). Second, we found that the trial judge failed to properly follow the three-step Batson protocol because it did not "afford defense counsel the opportunity to show that the prosecutor's stated reasons for the strikes were pretextual" (id.).
On remand, the judge who presided over the trial conducted a renewed Batson hearing at which neither the original prosecutor nor defense counsel testified or participated. At the hearing, the judge stated that the record was "already clear as to [Hewitt and Prosser]," and asked the People to explain their reason for striking Lortey. The People responded that, as with Hewitt and Prosser, Lortey was struck because he had expressed reservations about his ability to fairly listen to police testimony. The judge stated his "distinct recollection" that comments by an unnamed juror about negative experiences with police officers were made by Lortey, and explained that that was the reason he later said he would have granted a cause challenge as to Lortey. The court subsequently issued a written decision denying defendant's Batson motion.
I reject defendant's argument that we should not credit the trial judge's independent recollection that Lortey had made comments about his negative experiences with the police. No basis exists on this record to question the judge's explanation that he had a "distinct" and "clear" recollection of the case because he had only tried three cases in the Bronx. The majority appears to discredit the judge's finding, but fails to address the fact that defense counsel presented no evidence at the hearing, such as testimony or notes from the original defense attorney, to contradict the judge's recollection. Nor did defense counsel seek to call the original trial [*7]prosecutor as a witness to determine if his recollection might be different from the judge's [FN2]. Likewise, I find no merit to defendant's complaint that the judge's statements were not sworn (see People v Alomar, 93 NY2d 239, 247 [1999] [in a reconstruction hearing, the trial judge is not a witness, but rather the official who certifies what originally took place]).
Although the trial judge made findings as to Lortey, the same cannot be said for Prosser. At the beginning of the hearing, the judge stated that the record from the original Batson proceeding was "already clear" with respect to Prosser. However, we concluded just the opposite in our original decision (141 AD3d at 30 ["no record exists to support the assertion that [Prosser] had been the victim of police harassment"]). At the hearing, neither the prosecutor nor the judge attempted to ascribe any of the unnamed jurors' comments to Prosser, or otherwise shed further light on the reasons for striking him. Thus, the record as to Prosser remains as ambiguous and unclear as before.[FN3]
In accord with our remand, the trial judge gave defense counsel the opportunity to argue that the prosecutor's explanations were a pretext for discrimination. However, in his decision, the judge made no findings whatsoever on pretext. Instead, he mistakenly concluded that it was the "understanding" of the court and the parties at the original Batson hearing that defense counsel was not challenging the proffered reasons as being pretextual. No fair reading of the record supports the judge's misapprehension that defense counsel conceded that the prosecutor's strikes were based on nonpretextual reasons.
Because the trial judge failed to fully comport with our previous remand, and neglected to address significant issues identified therein, I would again remand this matter for a reopened Batson hearing. At that hearing, the court should clarify the record as to the People's reasons for challenging Prosser, and make findings as to whether the proffered reasons for striking all three jurors are pretextual. Although the majority agrees with me that the court erred in concluding that defense counsel had conceded the lack of pretext, it inexplicably goes on to determine as a matter of law, on an incomplete record, that the prosecutor's reasons for the challenges were pretextual, and then proceeds to dismiss the indictment. In my view, the fact that the judge misunderstood defense counsel's position on pretext requires a remand so that the judge can make findings on that issue (see People v Payne, 88 NY2d 172, 186 [1996] [remanding matter where trial judge failed to complete Batson protocols]).
In light of the ambiguities in the record of the original Batson proceeding, I believe that, as is typical with such reconstruction hearings, the original attorneys who tried the case should be present at the reopened hearing, along with any notes they may have taken during the voir dire [FN4]. Although the majority suggests that the prosecutor must testify as a sworn witness and be subject [*8]to cross-examination, the Court of Appeals has held otherwise (see People v Hameed, 88 NY2d 232 [1996], cert denied 519 US 1065 [1997]).
The majority concludes that even if the struck jurors had been the victim of police harassment, excluding them on this basis would necessarily be a pretext for discrimination. I believe that such a finding cannot be made by us on this incomplete record. Nor is there a basis for the majority's apparent adoption of a per se rule, which is inconsistent with this State's jurisprudence (see People v Turner, 294 AD2d 192 [1st Dept 2002], lv denied 98 NY2d 732 [2002] [that a prospective juror had expressed hostility to police undercover operations was both a race-neutral and nonpretextual reason]; People v Ramos, 124 AD3d 1286, 1287 [4th Dept 2015], lv denied 25 NY3d 1076 [2015] [finding no pretext in prosecutor's striking two African-American prospective jurors who expressed dissatisfaction with how the police investigated crimes committed against them]). Rather, the determination of whether a proffered reason is pretextual must be made on an examination of the entire voir dire record, including an exploration of the motives and credibility of the challenging party (see People v Smocum, 99 NY2d 418, 422 [2003] [ultimate determination of discriminatory intent is based on all of the facts and circumstances presented and is focused on the credibility of the race-neutral reasons]). That is why a hearing was ordered in our earlier decision. In the absence of a fully-developed record, we cannot decide the issue of pretext, particularly as to Prosser.
Finally, even if a Batson error occurred, the remedy is not, as the majority concludes, to dismiss the indictment, but rather to remand for a new trial. "The Criminal Procedure Law provides that, upon reversal for error or defect which resulted in prejudice to a defendant or deprived him of a fair trial, a new trial must be ordered" (People v Allen, 39 NY2d 916, 917 [1976]).
Although in rare cases, some courts have dismissed an indictment where the defendant, as here, has served the incarceratory part of her sentence, those cases are the exception, and involve relatively minor offenses where no penological purpose would have been served in remanding the matter (see e.g. People v Tyrell, 22 NY3d 359 [2013] [misdemeanor marijuana offense]).
Here, in contrast, defendant was convicted of a violent felony assault as a result of her punching and biting police officers who were in the process of arresting her. The majority does not explain why no penological purpose would be served by remanding this case for a new trial (see People v Peters, 157 AD3d 79, 85 [1st Dept 2017], lv denied 30 NY3d 1118 [2018] [finding a penological purpose in remanding where the defendant was convicted of a serious felony, despite fact that sentence was completed]; People v Roopchand, 107 AD2d 35, 38 [2d Dept 1985], affd 65 NY2d 837 [1985] [finding penological purpose in remanding
because should a defendant be convicted on retrial, it would be relevant for sentencing enhancement purposes if he were to commit another felony]).
Judgment, Supreme Court, Bronx County (Thomas A. Breslin, J.), rendered May 17, 2013, reversed, on the law, and the indictment dismissed.
Opinion by Manzanet-Daniels, J. All concur except Friedman, J.P. who dissents in an Opinion, and Richter, J. who dissents in an Opinion.
Friedman, J.P., Richter, Manzanet-Daniels, Gische, Mazzarelli, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 10, 2019
CLERK



Footnotes

Footnote 1:The dissent faults the defense for presenting no evidence at the hearing, but it is undisputably the prosecution's burden, at step two, to come forth with race-neutral explanations for the questioned strikes.

Footnote 2:I am particularly troubled by the majority's assertion that the record of this case evidences an attempt by the office of the Bronx County District Attorney to effect "the wholesale exclusion of African American males" from the jury. I do not believe that the exercise of these three peremptory exclusions amounts to such a "wholesale" exclusion.

Footnote 3:Certainly, at the trial itself, a prosecutor is not subject to cross-examination by the defense on a Batson issue.

Footnote 4:At the beginning of the reconstruction hearing, defense counsel asserted that defendant was "entitled to . . . any notes on any conversations on which the People relied." Although the court did not render a decision at the hearing, and both sides submitted posthearing memoranda, it appears that defense counsel did not further pursue defendant's asserted "entitle[ment]" to any surviving notes of the trial prosecutor. In Foster v Chatman (__ US __, 136 S Ct 1737 [2016]), which the majority cites, the defendant had obtained the prosecution's notes on jury selection at his trial pursuant to a state open records statute, and those notes were admitted into evidence at his postjudgment habeas corpus proceeding in state court (see id., 136 S Ct at 1743). The defendant's entitlement to production of the prosecution's voir dire notes in Foster — a matter of state statutory law — was not at issue upon the defendant's appeal to the United States Supreme Court from the state courts' denial of his petition for habeas relief. Accordingly, Foster does not stand for the proposition that the prosecution must produce its trial notes for a Batson reconstruction hearing. In any event, here, defendant did not seriously make and pursue any claim to entitlement to production of the trial prosecutor's notes. To reiterate, if defense counsel believed that the notes were vital to the reconstruction hearing, was it not incumbent upon her to tell the court, in sum and substance, that counsel could not meaningfully proceed without the notes? Absent some indication that counsel communicated that message to the court, I do not see how the failure to turn over the notes can set this case on a path to dismissal of the indictment.

Footnote 5:Of course, the defense is entitled to attack the factual basis for the reason proffered by the prosecution for the exercise of a peremptory challenge under Batson. As just stated, however, defendant's trial counsel never even attempted to mount such an attack at voir dire in this case — presumably because he well knew that the prosecutor had accurately characterized the responses of the panelists at issue. Moreover, defendant's belated attempt to mount such an attack at the reconstruction hearing is, in my view, unavailing, for the reasons discussed below.

Footnote 6:In taking the position that "an appellate court . . . [cannot] assess the validity of a proffered race-neutral reason for a peremptory challenge without adequate record support," Justice Richter overlooks the deference that is owed to a trial court that, having actually seen and heard the responses of the juror in question, either accepted or rejected the proffered reason. Thus, where it cannot be determined from the cold record which jurors gave which voir dire responses (as will not infrequently be the case, given that transcripts typically do not identify jurors by name), an appellate court should defer to a trial court's finding that a given juror's responses did or did not support the race-neutral reason proffered for a peremptory challenge.

Footnote 7:That Hewitt was the panelist questioned immediately before the "unnamed juror" is plain from the transcript, inasmuch as the prosecutor addressed Hewitt by name.

Footnote 8:Although my analysis of the Batson issue with respect to Lortey is based on the voir dire record as clarified by the reconstruction proceedings held on remand, the majority offers no response to it. I note that I continue to believe, as stated in my dissent from the previous decision, that defendant's trial counsel's concession, when Lortey was being considered for service as an alternate, that he had "demonstrated in a variety of ways that [he] didn't want to be here," is sufficient to defeat the Batson claim defendant raises on appeal as to him (see 141 AD3d at 40).

Footnote 9:In the previous decision (see 141 AD3d at 25, 26 n 1, 29), the majority appears to assume that the same "unnamed juror" made the just-quoted statement concerning "[b]ad experience with cops" (which the reconstruction court implicitly attributed to Lortey, as just stated) and the previously discussed statement concerning "the stop and frisk policy . . . happen[ing] to me every day" (which is plainly attributable to Prosser, viewing the voir dire record as a whole, as previously discussed). I see no basis in the record for the majority's apparent assumption that both statements — which are separated by eight pages in the voir dire transcript — were made by the same panelist. Thus, the court's statement at the reconstruction hearing, in response to defense counsel, that it was his "distinct recollection" that Lortey was an "unnamed juror" referenced in our previous decision (id. at 25) is entirely consistent with attributing the former statement to Lortey and the latter statement to Prosser.

Footnote 10:Contrary to the majority's assertion, nowhere do I "fault[] the defense for presenting no evidence at the [reconstruction] hearing." However, if defendant's counsel at the reconstruction hearing believed that the prosecution's interpretation of the voir dire record was in error, it was incumbent on her to make a reasoned argument to that effect.

Footnote 11:Again, at trial, defense counsel failed to object to the court's failure to give him an opportunity to make arguments concerning pretext.

Footnote 1: As the court was rendering its decision, the prosecutor added that he struck Prosser because he was making faces and said he did not want to be there.

Footnote 2: Contrary to the majority's suggestion, I am not shifting the step-two burden of proof to defendant. I am simply pointing out that there is no evidence in the record to warrant rejection of the trial court's recollection.

Footnote 3: I do not agree with Justice Friedman's view that we, as an appellate court, can assess the validity of a proffered race-neutral reason for a peremptory challenge without adequate record support.

Footnote 4: There is no indication in this record that the original attorneys would be unavailable at the reopened hearing.